McKinney, J.
delivered the opinion of the court.
The plaintiffs in error, who were defendants below, were sued, in trover, for the conversion of the propertyMescribed in the declaration. On the trial, they read, and relied upon in justification, two executions, in debt, issued by a justice of the peace against defendant in error, by virtue of which *114 the property was seized and sold as his property, by Hampton, and purchased by Knox. On each of said executions is the following endorsement, made by the justice, under his hand and seal, viz: “For the want of an officer, I do hereby deputise William Hampton to execute the within process, and return it according to law.”
His Honor, the Circuit Judge, instructed the jury, in substance, that a justice of the peace had no power or authority to appoint a private person, or any other than a regular officer, to execute final process of execution, against a judgment debtor: that such an appointment would be illegal and void, and, consequently, would be no protection, or justification, to the person acting under it.
The only question necessary to be determined is, whether or not the justice was empowered by law, to deputise Hampton to execute said process.
The act of 1741, ch. 5, sec. 9, provides, that “It shall and maybe lawful for any justice of the peace within this State, to direct any such precept or. mandate ” (issued by him) “ in the absence of, or for want of a constable, to any person, not being a party, who shall be obliged to execute, or endeavor in the best manner he can, to execute the same, under the like penalty any constable shall be liable to, by virtue of this act, to be recovered and applied as aforesaid.”
It is probably true, as has been argued, that the act referred to was merely declaratory of the common law, and conferred upon, constables no other or greater authority than was previously possessed: and that as, at common law, the general duty and j>ower of constables, were merely “to keep the King’s peace in their several districts,” the power conferred upon the justices by the 9th section was intended, and should be construed, to extend and apply only to “precepts or mandates ” in criminal, and not in civil cases.
*115 If the construction of this section were a new question, we should perhaps feel no hesitation in assenting to the cor-' rectness of the construction contended for. But, conceding that the 9th section was originally intended .to apply only to process in criminal cases, it is not to be questioned, that the term “precept” used therein, comprehends and properly applies to civil process, equally as to criminal. And it is as little to he questioned, that the understanding and practice of the profession, and tribunals of justice, from a period co-existent with, if not anterior to, the organization of our State government, has been in opposition to the construction now insisted upon. And although we might feel satisfied that this was a mistaken and wholly erroneous exposition of the law, in the first instance, yet so long an acquiescence, by the courts, has given it a sanction which, we think, ought not now to be questioned. As said by the court in the case of Stuart vs. Laird, 1 Cranch. R., p. 300-309— “It is a contemporary interpretation of the most forcible nature — a practical exposition too strong and obstinate to be shaken or controlled-.” In this view we are of opinion, that the justice was empowered to depute a private person, as a special officer, to execute said process ; and although it would have been more formal and proper to have directed it to the person by name, yét, we regard the manner of appointment, in this case, as in substantial accordance with the law. The question as to filling the blank with the Christian name of the special officer, may not be free from difficulty, but it does not arise upon this record.
The judgment of the Circuit Court will be reversed, and the cause remanded for a new trial.